Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3274 | **DATE** | 6/26/2001 |
| **CASE TITLE** | JOHNSON vs. FEDERAL EXPRESS CORP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 12 JULY 01 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted as to plaintiff's claims of race discrimination and is denied as to plaintiff's claim of retaliation. All previously set dates shall stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | JUN 27 2001 |
| | Notified counsel by telephone. | date docketed |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | 6/26/2001 |
| JS | courtroom deputy's initials | date mailed notice JS mailing deputy initials |

FD-7 FILED FOR DOCKETING 01 JUN 27 AM 8:08

Date/time received in central Clerk's Office

Document Number 26

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC JOHNSON, Plaintiff, v. FEDERAL EXPRESS CORPORATION, Defendant. | No. 00 C 3274 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On May 30, 2000, plaintiff Eric Johnson ("Johnson") filed a complaint against defendant Federal Express Corporation, ("FedEx") alleging that FedEx discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), and in violation of 42 U.S.C. §1981 and that FedEx retaliated against him for asserting his statutory rights in violation of Title VII. On May 16, 2001, FedEx filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Johnson's response to defendant's motion does not meet the standards set forth in Local Rule 56.1(b)(2). Despite this failure, however, this court accepts Johnson's response as it stands and will consider Johnson's response in the evaluation of this motion. Having considered the matter fully, for all the reasons stated herein, FedEx's motion for summary judgment is GRANTED as to Johnson's claims of racial discrimination under Title VII and §1981 and is DENIED as to Johnson's claim of retaliation under

1

26

Title VII.

## STATEMENT OF FACTS[1]

On July 23, 1992, FedEx hired Johnson as a package handler. FedEx ultimately promoted Johnson to courier and Johnson worked at the FedEx station in Aurora, Illinois. In late 1996, or in the beginning of 1997, FedEx assigned Johnson to cover Route 96, which included the Bolingbrook, Illinois area. At that time, the Aurora station was responsible for Bolingbrook, Lockport, Lemont, Argon, South Naperville, and Romeoville, Illinois areas.

In or around early 1999 or late 1998 a new FedEx station opened in Hillside, Illinois, which overlapped some of the territories already covered by the Aurora station. In addition, the Bolingbrook area previously serviced by the Aurora station had grown significantly. As a result, FedEx restructured several routes at the Aurora station or transferred entire routes to the Hillside station. The reorganization effected the Bolingbrook, Joliet, Lockport, and Romeoville areas and just about every route at the Aurora station was modified in some way. Consistent with the reorganization efforts, FedEx changed Johnson's route.

In early August, 1999, FedEx received a complaint from a customer that Johnson had thrown a package that he was delivering. FedEx investigated the complaint and Johnson received a single day suspension with pay as a result. On August 24, 1999, someone reported to FedEx management at the Aurora station that they saw Johnson enter the Aurora station after his scheduled start time. A subsequent review of Johnson's timecard indicated that Johnson signed his timecard with an

---

[1] The following facts are undisputed and are taken from the defendant's Local Rule 56.1(a) and plaintiff's Local Rule 56.1(b) statements of material facts and accompanying exhibits.

earlier time than the time someone observed him entering the station. This discrepancy prompted an investigation and FedEx determined that Johnson had falsified his time card. During the investigation, which lasted about ten days, FedEx placed Johnson on investigative suspension with pay and Johnson received a warning letter for the violation.

On September 15, 1999, Johnson wrote a letter to Ronald J. Kress of FedEx complaining about racial discrimination. In that letter, Johnson stated that he had been harassed and discriminated against by his manager Jim Sulick and by the Aurora station manager Don Gaa. Johnson describes briefly the circumstances of his route change, his time card incident, and the customer complaint, and Johnson stated that all three incidents constituted harassment and were initiated based on his race. Johnson went further to state in the letter that as a result of him being a "whistle blower," attempting to "shed light" on management dishonesty and discrimination that Sulick and Gaa were trying to terminate him in retaliation. Johnson closed the letter warning Kress that he would be carrying a pocket tape recorder in order to record future conversations and asking Kress to transfer him to another station immediately.

On September 27, 1999, Johnson injured, himself, while off duty at his home. Johnson saw a doctor for his injury and the doctor told Johnson not to do any lifting over a certain weight and that he should return to work only on light duty. The next morning on September 28, 1999, Johnson contacted Sulick and informed Sulick that he was injured, that the doctor put him on light duty and that Johnson believed that he would be off work until Thanksgiving. On September 29, 1999, Johnson again called in sick to work. Johnson did not call into work on September 30th.

On October 1, 1999, Dr. Joseph M Serpe, a chiropractor, signed a "disability certificate" for Johnson dated the same day. The certificate stated that Johnson was totally incapacitated until

further notice. Johnson attempted to fax this certificate to Sulick on October 1st but the fax did not transmit. Johnson did not attempt to fax this certificate again until October 5, 1999, and Sulick ultimately received Johnson's fax on October 5th. Johnson did not call in work on October 1st, 2nd, or 3rd. Johnson did call into work on October 4th, but as of the time of his deposition testimony Johnson could not remember to whom he had spoken. Johnson called in again to work on October 5th and talked to a receptionist. Johnson told the receptionist at that time that he was still injured and could not return to work.

FedEx's attendance policy[2] reads as follows:

> Employees who are absent for two consecutive work days without notifying their manager or another member of management in their work area are considered to have terminated their employment. In addition, employees who are unavailable for work for two consecutive work days even though they advise their manager/management of their unavailability are also considered to have terminated if the reason for their absence is unacceptable. These terminations are classified as "voluntary resignation."

Pursuant to this policy, on October 4, 1999, FedEx terminated Johnson for failing to report to work and for failing to contact his supervisors on September 30th, October 1st and October 4th.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor.

---

[2]As discussed later in this opinion, FedEx has not submitted a copy of this attendance policy for review by this court.

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that the party relies. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Id. Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment. Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir.1995) (hearsay testimony may not be considered in summary judgment proceeding).

Despite being represented by counsel, Johnson has failed to properly respond to this motion for summary judgment. Local Rule 56.1(b) states that a party opposing a motion filed pursuant to Fed.R.Civ.P. 56 shall file opposing affidavits, a supporting memorandum of law, and a concise response to each numbered paragraph of the movant's Local Rule 56.1(a) statement of uncontested facts. See Local Rule 56.1(b). Johnson responded to each numbered paragraph of defendant's 56.1(a) statement of facts, and provided his own statement of uncontested facts. Johnson, however,

5

did not submit a memorandum of law in opposition to this motion for summary judgment. Johnson entitled his submissions to the court: PLAINTIFF ERIC JOHNSON'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT. This "memorandum" included an insufficient summary of this case, a cursory standard of review for this case, Johnson's 56.1(b) statement and Johnson's responses to defendant's 56.1(a) statement. Johnson's "memorandum" does not articulate any legal arguments in response to defendant's motion, and this "memorandum" does Johnson cite any legal precedent to assist this court spot the genuine issues of material fact in this case.

Rule 56 of the Federal Rules of Civil Procedure, however, does not authorize the granting of summary judgment as a sanction for failing to file a proper response to a motion for summary judgment. See Tobey v. Extel/JWP, Inc., 985 F.2d 330, 332 (7th Cir. 1993). Rule 56(e) permits summary judgment only "if appropriate - that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Id. Accordingly, despite Johnson's deficient submissions, this court must determine whether summary judgment is proper as a matter of law by reviewing the record, the submissions of the parties, and by drawing all justifiable inferences in favor of Johnson. See Wienco, Inc. v. Katahn Associates, Inc., 965 F.2d 565, 568 (7th Cir. 1992).

## ANALYSIS

I. Johnson's Claim of Race Discrimination under Title VII

In order to survive a motion for summary judgment, a Title VII plaintiff must establish evidence of employment discrimination based on race or sex. In other words, Johnson must establish that he was treated less favorably than other similarly situated employees for reasons of

race or sex. Proof may be by direct evidence of discrimination or via the McDonnell Douglas route. See McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). In this case, Johnson alleges discrimination based on race but has no direct evidence of discrimination, therefore, Johnson must proceed on the indirect method of proof described by the McDonnell Douglas case. Under the McDonnell Douglas method, Johnson must show (1) that he is a member of a protected class; (2) that he was qualified for the job in question or was meeting his employer's legitimate performance expectation; (3) that he suffered an adverse employment action; and (4) that the employer treated similarly situated persons not in his protected class more favorably. See Johnson v. Zema Systems Corporation, 170 F.3d 734, 742-3 (7th Cir. 1999). If Johnson establishes his prima facie case, the burden of producing legitimate nondiscriminatory reasons for the adverse action shifts to FedEx. See Johnson, 170 F.3d at 742. Once FedEx produces those reasons, Johnson bears the burden of showing that FedEx's proffered reasons are pretext. Id.

In this case, there is no need to reach the later inquiries of the McDonnell Douglas analysis because Johnson has failed to establish a prima facie case of race discrimination under Title VII. The crux of Johnson's claim of discrimination centers around three incidents that occurred previous to his termination on October 4, 1999: (1) his route change in early 1999, (2) his investigation and ultimate warning for timecard irregularities, and (3) his reprimand stemming from a customer complaint. First, Johnson has failed to establish in the record that his route change was an adverse employment action. Second, Johnson has failed to establish in the record that similarly situated persons not in Johnson's protected class were treated better than Johnson as to any of the three incidents listed above. Accordingly, Johnson has failed to establish a prima facie case of race discrimination under Title VII and summary judgment in favor of FedEx on this issue is necessary

as a matter of law.

### A. Johnson did not suffer an adverse employment action

It is undisputed in this case that Johnson is a member of a protected class[3]. In addition, FedEx does not argue and there are no facts in the record to establish that Johnson was not meeting the legitimate expectations of FedEx during the time of the above three incidents. Nonetheless, Johnson has failed to establish a prima facie case of discrimination because there is insufficient evidence in the record to establish that Johnson's route change was an adverse employment action.

An adverse employment action is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." See Stockett v. Muncie Indiana Transit System, 221 F.3d 997, 1001 (7th Cir. 2000)(quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). In looking at Johnson's route change in 1999, the record is silent as to the organization of Johnson's route before and after FedEx's reorganization and there is insufficient facts in the record to establish that Johnson's route change was something more than a mere inconvenience or an alteration of job responsibilities. In an attempt to establish an adverse employment action, Johnson states that his route before the reorganization was "desirable for a number of reasons including its proximity to the Aurora station." (Plaintiff Eric Johnson's Memorandum In Response to Defendant's Motion for Summary Judgment ("Johnson's Response") 2 at ¶3). This statement is without support in the record, the record is silent as to why or how proximity is a desirable feature in a particular route, and Johnson has failed to specify any other reasons why his route was so desirable. Accordingly,

---

[3]Plaintiff Eric Johnson is a black man.

8

Johnson has failed to produce in the record sufficient evidence to establish a genuine issue of material fact that his route change in early 1999 was an adverse employment action.

B.  Similarly situated persons at FedEx were not treated more favorably

In addition to failing to establish a genuine issue of material fact that his route change was an adverse employment action, Johnson has failed to establish that similarly situated persons not black were treated more favorably by FedEx within the context of the three incidents listed in Section I of this opinion. Johnson, in this case, has the burden of showing that similarly-situated non-black employees were treated more favorably than him. Specifically, Johnson must adduce evidence into the record which demonstrates: (1) that FedEx did not change the routes of other non-black employees who were couriers out of the Aurora station or that FedEx made changes in non-black courier routes out of the Aurora station more amiable in comparison to the changes FedEx made in Johnson's route; (2) that FedEx treated non-black employees who were suspected of timecard fraud more favorably than FedEx treated Johnson; and (3) that FedEx treated non-black couriers who were subject to customer complaints more favorably than FedEx treated Johnson.

As for the timecard investigation and the customer complaint, even though the end results of these two incidents could be characterized as adverse employment actions, Johnson has, nonetheless, failed to produce evidence in the record establishing that any employee of FedEx has been treated more favorably than Johnson when faced with similar circumstances.

In reference to his route change, Johnson states that his route "was taken from Plaintiff [Johnson] and given to [sic] white female." (Johnson's response 2 at ¶3). Johnson has failed, however, to produce any evidence in the record to support this bare allegation. The record, however, does establish that all the routes at the Aurora station were changed at the same time for business

reasons and Johnson admits in his deposition testimony that he was not the only courier whose route was changed. (Johnson Tr. 167 attached Ex. B Defendant Federal Express Corporation's Local Rule 56.1(A)(3) Statement of Uncontested Material Facts). Upon further review of the record, Johnson has failed to carry his burden of showing that FedEx treated similarly-situated persons not his in protected class more favorably than him.

II. Johnson's Claim of Race Discrimination under §1981

By its terms, section 1981 governs contractual relationships. 42 U.S.C. § 1981(a). Section 1981 bars all racial discrimination with respect to making and enforcing contracts. Id. In order to bring a section 1981 claim there must be a contract at issue. See Gonzalez v. Ingersoll Mill. Mach. Co., 133 F.3d 1025 (7th Cir. 1998). The evidence is this case does not establish the existence of a contractual relationship between Johnson and FedEx. Additionally, Johnson does not allege and the evidence does not demonstrate that he was discriminated against on the basis of his race by FedEx with respect to making or enforcing any contract. Consequently, Johnson's §1981 claim must fail and summary judgment in favor of FedEx as to this claim is necessary as a matter of law.

In addition, Johnson's §1981 claim must fail because he has failed to establish a prima facie case of racial discrimination under Title VII. The same standards governing liability under Title VII apply under §1981. Rush v. McDonald's Corporation, 966 F.2d 1104, 1113 n. 34 (7th Cir.1992); Yarbrough v. Tower Oldsmobile, Inc., 789 F.2d 508, 511 (7th Cir.1986). Therefore, as Johnson's Title VII claim fails so must his §1981 claim.

III. Johnson's Claim of Retaliation under Title VII

    A. Elements to a Prima Facie Case

Section 704 of Title VII makes it unlawful "for an employer to discriminate against any of

his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Lacking any direct evidence of retaliatory intent, Johnson again must proceed under the McDonnell Douglas framework. A prima facie case of retaliation under Title VII requires Johnson to establish: (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) that there is a causal link between the protected expression and the adverse action. Russell v. Board of Trustees of the University of Illinois at Chicago, 243 F.3d 336, 334 (7th Cir. 2001). If Johnson establishes his prima facie case, the burden of producing legitimate nondiscriminatory reasons for the adverse action shifts to FedEx. Id. Once FedEx produces those reasons, Johnson bears the burden of showing that FedEx's proffered reasons are pretext. Id.

In this case, it is undisputed that Johnson's letter of September 15, 1999, constituted statutorily protected activity. In addition, it is undisputed that Johnson's termination of October 4, 1999, constitutes an adverse employment action. In support of its motion for summary judgment, FedEx argues that Johnson has failed to establish a prima facie case of retaliation because there is no evidence in the record of a casual link between Johnson's protected activity and the adverse employment action. The evidence in the record of this case betrays FedEx's argument as there is sufficient evidence in the record such that a reasonable finder of fact could find a casual connection between Johnson's protected speech and the adverse employment action suffered by Johnson. Accordingly, Johnson has established a genuine issue of material fact as to a prima facie case of retaliation under Title VII.

B.  Casual link

In order to demonstrate a "causal link," the plaintiff must demonstrate that the employer would not have taken the adverse action "but for" the protected expression. See Johnson v. University of Wisconsin-Eau Claire, 70 F.3d 469, 479 (7th Cir. 1995). In this case, the temporal proximity of Johnson's letter of September 15th and his termination on October 4th standing alone is sufficient to give rise to a reasonable inference that FedEx would not have taken the adverse action but for the protected expression. See e.g., Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1314 (7th Cir. 1989); see also Sweeney v. West, 149 F.3d 550, 557 (7th Cir.1998)(holding that in order to establish a causal connection via temporal proximity the employer's adverse action must follow fairly soon after the employee's protected conduct); Eastland v. Tennessee Valley Auth., 704 F.2d 613, 627 (11th Cir.1983) ("Evidence that the adverse treatment followed closely upon the protected activity ... may be sufficient to establish a causal connection."). In addition, FedEx has failed to provide sufficient evidence in the record that explains its attendance policy. This court finds that a reasonable finder of fact could find that Johnson would not have been terminated on October 4th he had not written his letter complaining of harassment and discrimination on September 15th due to the ambiguity that exists about FedEx's attendance policy.

In looking at the record, it is unclear why Johnson's reason for not coming to work on September 28th was insufficient to excuse Johnson from having to continue to call into work each day after September 28th. In addition, it is unclear from the record why Johnson's doctor certification on October 5th was not sufficient to excuse whatever obligation Johnson may have had to call-in on September 30th, October 1st and October 4th particularly since the doctor's reasons for Johnson's absence on October 5th verified Johnson's reasons on for his absence on September 28th.

12

Upon further review of the record, this court finds that the temporal proximity between the adverse action and Johnson's protected speech and the ambiguity as to the operation of FedEx's attendance policy is sufficient evidence such that a reasonable finder of fact could infer that FedEx management was in a particular hurry to terminate Johnson's employment due to his recent complaints of discrimination.[4]

### D. FedEx's nondiscriminatory reason for Johnson's termination

Since Johnson has established his prima facie case of retaliation under Title VII, the evidentiary burden now shifts to FedEx to articulate a legitimate, nondiscriminatory reason for Johnson's termination. In evaluating a defendant-employer's legitimate, nondiscriminatory reason for an adverse employment action, a court must determine whether the employer gave an honest explanation of its behavior even if the reasons are foolish or trivial or even baseless. Jackson v. E.J. Brach Corp., 176 F.3d 971, 984 (7th Cir. 1999). A defendant, however, may not offer merely any nondiscriminatory reason for the discharge, a defendant must offer a legitimate reason. See Jennings v. Tinley Park Community Consolidated School Dist. No. 146, 796 F.2d 962, 967 (7th Cir. 1986).

FedEx's stated reason for plaintiff's termination is his failure to call-in or report to work on September 30, October 1st, and October 4th. FedEx, however, has failed to legitimize its nondiscriminatory reason for Johnson's termination with sufficient evidence in the record. The record is unclear as to how exactly does FedEx's attendance policy works in general and how FedEx management applied its own policy to the facts of this case. In addition to failing to provide a

---

[4]FedEx's continued discussion in its memorandum in support of its motion for summary judgment and in its reply brief as to the "lengths" manager Jim Sulick went through in an attempt to ascertain Johnson's whereabouts during Johnson's absence is immaterial as to any element of a prima facie case of retaliation under Title VII.

13

legitimate nondiscriminatory reason for Johnson's termination, Johnson has establish a genuine issue of material fact as to pretext by testifying in his deposition that he did call in to inform FedEx that he would not be in for work on October 4th, that FedEx knew of his injury on September 28, 1999, and that his injury was subsequently verified by medical certification on October 5th. This testimony calls into question FedEx's reason that Johnson was terminated because he did not call into work on September 30, October 1st, and October 4th. Accordingly, recognizing the ambiguity in FedEx's attendance policy and acknowledging the confusion that exists in the record surrounding Johnson's phone conversation with FedEx on October 4th, this court finds that there is sufficient evidence in the record such that a reasonable finder of fact could determine that FedEx's reason for Johnson's termination was a pretext for retaliation.

To be clear, this court does not reject FedEx's stated nondiscriminatory reason for Johnson's termination. Instead, this court finds that there is insufficient evidence in the record by which a reasonable finder of fact can reconcile FedEx's nondiscriminatory reason, with FedEx's attendance policy and the undisputed facts of this case. FedEx has failed to carry its evidentiary burden in this case because the record in this case is curiously ambiguous as to how FedEx's attendance policy works in connection with a continued absence from work due to medical injury. First, FedEx has failed to submit into the record a true and accurate copy of the relevant section of its attendance policy for review by this court. Perhaps reading the appropriate sections of FedEx's policy would alleviated the trepidation a reasonable finder of fact would have when attempting to reconcile FedEx's nondiscriminatory reason with the records as it stands now. Second, it is unclear whether FedEx's policy required Johnson to call-in each day of his continued absence regardless of whether Johnson provided an adequate excuse for an extended absence on the first day he was unable to

14

work. In other words, had Johnson called in on September 28th with adequate medical documentation that he had a medical injury would he still be required to call into every work day until he returned or face termination upon two consecutive days of not calling? Third, the record is silent as to which days between September 28, 1999, and October 4, 1999, Johnson was scheduled to work, how many vacation days Johnson had at that time and ultimately which days Johnson was required to call-in regardless of whether he had an adequate excuse. Fourth, it is unclear what reasons are "acceptable" by FedEx for excused absences. Fifth, it is unclear when "acceptable" reasons are due from a employee who is unable to work due to a medical injury. Sixth, it is unclear whether an employee is considered to have terminated their employment on the second work day after having failed to notify their manager on the first work day and on the second work day or whether an employee is considered to have terminated their employment on the third work day after having failed to notify their manager on the two previous work days. Finally, it is unclear whether Johnson's medical certification was sufficient to excuse his continued absence but was untimely or was Johnson's medical certification insufficient to excuse his continued absence or both.

Having found that there is sufficient evidence in the record such that a reasonable finder of fact could find that FedEx's nondiscriminatory reason is not legitimate and a pretext for retaliation, this court finds that Johnson has carried his complete evidentiary burden establishing a prima facie case of retaliation under Title VII. Accordingly, FedEx's motion for summary judgment must be denied as to this claim.

## CONCLUSION

For all the above stated reasons, defendant's motion for summary judgment is GRANTED as to Johnson's claims of race discrimination under Title VII and under 42 U.S.C. §1981. FedEx's motion for summary judgment is DENIED as to Johnson's claim of retaliation under Title VII. Johnson's claim of retaliation under Title VII will proceed to trial on the date previously scheduled.

This court strongly urges counsel and the parties to confer regarding a settlement in this case. This case is set for report on the status of settlement at 9:00 am on Thursday July 12, 2001. All previously set dates remain.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: June 26, 2001